HERBERT COLE, plaintiff in error, vs. EDWARD DYER, and others, defendants in error.

The Act incorporating a railroad, contained this provision: "And no subscription shall be received and allowed, unless there shall be paid to the commissioners, at the time of subscribing, the sum of five dollars on each share subscribed." This provision was not complied with. The corporation, nevertheless, organized itself, by electing directors, &c., and commenced building the road, by contracting with persons to grade it, &c. Some of those persons were not aware of the failure to pay the five dollars a share, or the subscriptions for stock. Afterwards, one of the stockholders who was aware of that failure when he became a stockholder, and who voted at the election of directors, and otherwise aided in setting up the corporation, applied to the Court, for leave to file an information in the nature of a *quo warranto*, against the directors, to require them to show by what authority, they exercised their powers. The Court rejected the application.
*Held*, That the Court did right.

*Quo Warranto*, in Walker Superior Court. Decision by Judge CROOK, May Term, 1859.

This was an application for a writ of *quo warranto*, to be directed to certain persons therein named, requiring them to show cause by what authority they exercised the powers, privileges and immunities of the corporation, created by the Act of the General Assembly of the State of Georgia, passed 22d day of January, 1852, under the name of "The Coosa and Chattooga River Railroad Company."

The petition states that said Act provides for the construction of a railroad from the Western & Atlantic Railroad at or near Ringgold, through the counties of Walker and Chattooga, to the line of the State of Alabama. The capital stock of said company to be $400,000, and certain persons were appointed commissioners to open books of subscription, &c.; that the commissioners opened the books for subscription, and petitioner subscribed to the amount of seven shares, and others subscribed various sums, which subscriptions the petitioner alleges are not valid and binding on the subscribers, on account of the failure to pay at the time of subscribing five dollars on each share as required by

said Act of incorporation; nor did said commissioners issue certificates according to the provisions of said charter; that the entire stock was taken, and subscribed for, by eleven persons, who did not intend to construct said road, and that the only organization of said company was under the stock thus subscribed, and that organization was null and void, and that no sufficient amount of stock has ever been subscribed to authorize the formation and organization of said company as provided by law; and further, that the charter requiring said road to be commenced within four years, has not been complied with, and that said charter thereby expired by the terms and provisions therein contained.

The petition further states, that Edwin Dyer, Augustus B. Culberson, Samuel McWhorter, James C. Wardlaw, Samuel Hawkins, John Woods and M. R. Allen, claim and insist that said company has been legally organized, and that they are the directors thereof, and that they have elected Edwin Dyer President, and Augustus B. Culberson, Secretary and Treasurer; and said board of directors are assuming to act as a corporation, and exercising all the powers and privileges conferred by the charter aforesaid, and are proceeding to collect money and make contracts in relation thereto without lawful authority, and contrary to the provisions of the Act of incorporation, and have made calls on the subscribers of the stock aforesaid for installments thereof.

The petition prays that they be required to show cause, by what authority they assume to exercise the powers and privileges aforesaid.

The respondents in response to the *rule nisi*, answer, that the General Assembly of the State of Georgia, did pass an Act for the incorporation of the Coosa and Chattooga River Railroad, as stated in the petition, and that the commissioners opened books of subscription as required by said Act, and they admit that instead of five per cent. being paid in cash on the capital stock at the time of subscription

as required by said charter; that the commissioners received the notes of subscribers for that amount payable on demand.

They admit that the original subscription of the capital stock of $200,000 was made by only eleven persons; that the period having nearly elapsed for securing the charter under the provisions of the Act of incorporation, these eleven persons did subscribe for stock to the amount of $200,000, not intending to hold or pay for the same, but for the purpose above stated of saving the charter; that the company was organized by these original subscribers, and afterwards others, upon becoming subscribers, were let in, and a certain portion of the stock thus originally subscribed for, was transferred to said new subscribers, and after about $125,000 was thus taken by others, there was a transfer of stock to this amount to them and the present board of directors elected and officers appointed, and operations have been commenced on said road, contracts let, and the work is in progress, &c.

Upon hearing the foregoing petition and answer, the Court dismissed the *rule nisi*, and counsel for petitioner excepted.

Lawson Black, for plaintiff in error.

*By the Court.*—Benning J. delivering the opinion.

According to the bill of exceptions, this case was regarded and treated, in the Court below, as " an application for leave to file an information in the nature of a *quo warranto ;*" and the judgment of that Court, made on consideration of the petition and the answer, was a refusal to grant the application. The case will be regarded and treated in the same way, in this Court, although the proceedings seem to be not entirely such as would be regular in a mere application for leave to file such an information.

The question, then, will be, was the Court right in refusing to grant leave, to file the information ?

The corporation is a private corporation; and, " It is said

Cole vs. Dyer.

by Mr. Wellcock, that the Court will not sanction this proceeding, *either when the franchise is not of a public character*, or the applicant appears to them in the light of one intermeddling with the affairs of others; in these cases they will leave him to inform the attorney-general, who will use his own discretion as to filing the information." *Ang. and A. Corp. sec.* 736 ; *Id. sec.* 745, *and cases cited. Grant on Corp.* 252–3, *and cases cited.*

We are not aware of any English case of a private corporation, in which an application for leave to file an information, was sanctioned ; there are many English cases in which it was refused. It is true, that there are some American cases, in which it was granted ; but unless these rest on English law, they are not authority in Georgia. *A. and A. sec.* 736.

Let us concede, however, that there is law, to authorize the application in such a case as the present case, is there any law to require, that the application should be granted?

· This, at least, is true ; that if the Court is ever at liberty to grant the application in the case of a private corporation, it is never under obligation, to grant it, either in that case, or, in even in the case of a public corporation. Whether the Court will, in any case, grant it, or not, is matter of discretion. *Ang. and A. sec.* 739, *and cases cited. Grant,* 253.

This Court does not interfere with the discretion of the Superior Courts, except in cases in which, it is clear, that the discretion has been exercised by them, very improperly. Is this one of those cases?

Herbert Cole, the applicant for the leave, was a stockholder in the corporation, and must, at the time when he became one, have been aware of all the matters of which he complains, for he became one by taking a part of the stock on which, there had been the failure to pay in the five per cent. required to be paid in, by the charter, and, we must presume, that, when he took this stock, he informed himself, as to whether any thing had, or had not, been paid upon it.

He took, from the original subscribers, a part of their stock, and they had paid nothing on their subscriptions. The class of stockholders to which, he belongs, passed a resolution in the following words. "Resolved, that we the stockholders of the Coosa and Chattooga Railroad Company, to whom has been transferred, a portion of the stock of said company, the amount of which, will appear, by reference to the stock book of said company, by the original stockholders of said company, do hereby agree, to have transferred to us, by the original stockholders of said company, the residue of stock, held by them, the proportion to the amount heretofore transferred to us, severally." It is to be presumed, that Cole went with his class, helped to pass this resolution.

After this resolution was passed, the stockholders consisting of the old, and the new, set, of which last, Cole was one, made a new election of directors; and then those directors elected a President and Secretary, and a Treasurer, and put the corporation in motion. We must in the absence of proof to the contrary, presume, that Cole was present at this election of directors, and participated in it; perhaps, we ought to presume, that he voted for the persons who were elected, for he is silent on the subject in his petition, and it must have taken a majority to elect, and there are more chances that a voter belongs to the majority, than, to the minority.

This is not all. The corporation, under its new organization, went forward and engaged in the work of building the road; they made contracts for grading, &c. with various persons, some of whom were citizens of Tennessee, and therefore, it is to be presumed, strangers to the matters complained of. These persons have done much work under their contracts. Some of the heavier sections of the road, being almost completely graded. In a word, these persons have *acted* on the faith of the legality of the organization of the corporation, an organization which the stockholders, Cole among them, held out to the world, as legal.

Thus then, we may say, that Cole, at the time when he

became a stockholder, was aware of the matters of which, he now complains; that, he sanctioned those matters, and helped to make them worse, not only by himself taking some of the vicious stock, but by assisting at the election of directors and perhaps, by voting for the very persons, as directors, whose authority to act as directors he now questions; and that men, some of them innocent men, have spent time, and money, and labor, in consequence of this conduct in him, and similar conduct in his fellow stockholders. And the question is, was it an improper exercise of the Court's discretion, to refuse such an application of such a person?

And we think that it was not.

An information has been refused to one, "who voted at the election sought to be impeached on the ground of an objection to the presiding officer," where he did not show, "that he was ignorant of the objection at the time of voting, to one who concurred in the act, or acquiesced in the title, of the defendant, which" he sought "to impeach;" to many other persons, on the ground of personal objection to them. *Ang. and A. sec.* 745, *and cases cited.* "A general principle on which, the Court acts with respect to the qualification to be a relator, is, that he who has concurred in inducing a party, to exercise an office, cannot be heard, on an application to turn him out of the office." *Grant Corp.* 254, *and cases cited.*

The effect of sustaining an information founded on the grounds stated in the petition, would be, to dissolve the corporation; and the dissolution of the corporation, would extinguish the debts due to and from it; and this Court held in *McDougald's, adm'rx., vs. Bellamy,* 18 *Ga.* 411, that stockholders in a bank whose charter contained a provision similar to the provision in this charter, were not entitled to insist on a non-compliance with that provision, to shield themselves from their ultimate liabilities to pay the bills of the bank. Do innocent contractors to grade this railroad, stand on a worse footing than the billholders of a bank?

On the whole, we affirm the judgment of the Court below. In doing so, however, we wish to be considered as deciding merely the rights of the plaintiff in error, Herbert Cole, and as not intimating an opinion as to the rights of others, and especially of the State.

Judgment affirmed.