## CONSOLIDATED TEXTILE CORPORATION *v.* EXPOSITION COTTON MILLS *et al.*

1. The question whether the superior courts of this State are authorized, under section 2823 of the Civil Code (of 1910), to grant more than one renewal of the charter of a private business corporation, being for decision by a full bench, and the court being equally divided on this question, Beck, P. J., and Hill and Gilbert, JJ., being of the opinion that under said section the superior courts possess such authority, and Russell, C. J., and Atkinson and Hines, JJ., being of the contrary opinion, the judgment of the lower court on this point is affirmed by operation of law.

2. A stockholder, who, with knowledge that the charter of a private business corporation has been extended by order of the superior court, deals with the same as a corporation, votes his stock in the election of its directors, has a special representative upon the board of directors, purchases stock of such company after such renewal of its charter, and has it transferred into his name upon the books of the company, and permits the directors of the company, for whose election his stock is voted, to transact the regular business of the company, and the company to transact its usual business, with his approval and consent, is estopped from seeking in equity to have a receiver appointed for the assets of said company, and to have the affairs of the company wound up, and its assets distributed among its stockholders, on the ground that the charter of the company has expired, though the court granting the renewal might have been without authority so to do.

No. 3874. SEPTEMBER 20, 1924.

Petition for receiver. Before Judge Humphries. Fulton superior court. June 26, 1923.

The Exposition Cotton Mills was incorporated on April 5, 1882,

by an order of the superior court of Fulton County, "for and during the term of 20 years, with the privilege of renewal as provided by law." On March 15, 1902, its charter, by an order of that date, was "renewed and extended for a full term of 20 years from April 5, 1902, with a continuation of all the rights, powers, and privileges heretofore granted to it, whether heretofore exercised or not, and including the right to again renew and extend its corporate existence from time to time, and at the expiration of said additional 20 years, as is or may be provided by law." On March 3, 1922, by an order of said court the charter of said company was again renewed for 20 years from its expiration on March 15, 1922. The application for this renewal was authorized by a resolution of the stockholders of the company adopted at a meeting held on the 2d day of February, 1922, and in accordance with its by-laws, of which all stockholders had legal notice. The petition for this renewal was filed and published as required by law, and complied in all respects with section 2823 of the Code of 1910.

On June 4, 1923, the Consolidated Textile Corporation filed its petition in Fulton superior court, in which, as a stockholder in the Exposition Cotton Mills, it sought to have the property of the latter company distributed among its stockholders, on the ground that the charter of the Exposition Cotton Mills had expired on March 15, 1922, in consequence of which said corporation was dissolved; and prayed for the appointment of a temporary and permanent receiver to take charge of all the property of said company for the purpose aforesaid. Plaintiff alleged that the order of Fulton superior court of March 3, 1922, granting a renewal of the charter of the Exposition Cotton Mills, was ineffectual for that purpose, because said court, under article 3, section 7, paragraph 18, of the constitution of this State, and under the above section of the Code, had no power to grant the renewal of a charter more than one time. Plaintiff first became a stockholder in the Exposition Cotton Mills in 1920. In 1921 it owned 2112 shares of defendant's capital stock, 49 of which stood under the name of Thomas P. Hinman. In April, 1922, plaintiff bought 367 additional shares. In April, 1923, it bought 308 additional shares, and had them transferred to it on the stock book of said company. A copy of the resolution of the stockholders of the Exposition Cotton Mills, which authorized the second renewal of its charter,

and which was adopted at a meeting held February 2, 1922, was sent to the plaintiff before said meeting was held. It made no objection of any kind, either to the form of the resolution or to its adoption, though it had full opportunity to do so. It made no objection to the application to the court for the second renewal of the charter, prior to the filing of its petition in this case. It made no objection to the corporation continuing its business under said order, but joined its fellow stockholders in continuing it in business, and in various ways acquiesced in and ratified the order. With full knowledge that this charter had been renewed and that the company was operating thereunder through a board of directors elected by its vote, and on which it had a special representative, plaintiff appeared at the annual meeting of the stockholders on September 20, 1922, and again voted its stock for every member of the company's board of directors who were conducting its affairs when its petition was filed in this case. Plaintiff's representative on said board has taken an active part in transacting the business of the company since April 5, 1922, when said renewed charter went into effect. Plaintiff accepted a dividend of six per cent., declared by this board of directors, payable to stockholders of record at noon on April 10, 1922, "from the latest earnings made to that date." Plaintiff accepted a dividend of two per cent., declared by the board of directors of this company on June 20, 1922, payable to stockholders of record on July 1, 1922, "out of the most recent earnings made up to June 30, 1922." The motion to declare this dividend was seconded by the plaintiff's special representative on said board. On September 20, 1922, a dividend of six per cent. was declared by the board of directors, payable to the stockholders of that date from the latest earnings of the company. Plaintiff's representative on said board voted with all its directors for said dividend. Plaintiff accepted this dividend. On December 20, 1922, the board of directors declared a dividend of four per cent. payable January 2, 1923, which plaintiff accepted. On March 15, 1923, a dividend of three per cent. was declared by the stockholders, payable to stockholders of record on March 20, 1923. Plaintiff's representative voted for same, and plaintiff accepted it. All the above dividends were paid out of earnings made by this company after April 5, 1922. At the annual stockholders' meeting of said company held September 20, 1922, plaintiff voted

with all other stockholders to approve the minutes of the meeting of stockholders held February 2, 1922, at which the renewal of the charter of this company was authorized. At the same meeting plaintiff voted for a resolution thanking the officers and directors, on behalf of the stockholders, for the satisfactory showing for the year just ended. Weekly meetings of the board of directors elected by plaintiff's vote have been held since April 5, 1922. Since that date, by this board's direction, the company built for operatives a new apartment house at a cost of over $15,000, bought a lot for operatives for $1800, made extensions to its cloth-room at a most of over $6000, made extensive repairs to cottages for operatives, bought and installed additional machinery at a cost of over $32,000, made a contract to take and pay for new looms at a cost of $100,000, and the looms were being installed when the petition in this case was filed, but the contract was still, to a large extent, unexecuted. On May 24, 1923, the board of directors authorized and the company made a contract to buy 100 72-inch looms, and plaintiff's representative on said board voted for this contract.

After the second renewal of its charter this company made a contract for wiring and equipping its mill village at a cost of $20,000, which was incomplete at the time of the trial. On April 5, 1922, the company had on hand a large quantity of cotton, and between that date and June 1, 1923, it bought 27,583 additional bales at a cost of $3,359,146, most of which it manufactured into cloth and sold, but on June 1, 1923, it had on hand 7000 bales of cotton, and was under contract to make and deliver to purchasers after that date large quantities of cloth. The company did various other transactions in conducting its business under said renewed charter through its board of directors, with the knowledge of plaintiff.

On the hearing the trial judge declined to appoint a receiver to take charge of the property of this company for the purpose of winding up its affairs and distributing its assets among its stockholders. To this judgment the plaintiff excepted.

*Winfield P. Jones,* for plaintiff.

*Brandon & Hynds, Reuben R. & Lowry Arnold,* and *Hall & Jones,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. The first headnote needs no elaboration.

2.  Is the plaintiff estopped, under the facts in the record, from undertaking to have a receiver appointed for the property of this company with the view of having its affairs wound up and its assets distributed among its stockholders, on the ground that the corporation had been dissolved by the expiration of its charter? In January, 1922, resolutions proposing to renew the charter of this company were sent to the plaintiff, so that it might know that it was the purpose of the company to apply for a second renewal of its charter. To these resolutions the plaintiff made no objection. Its representative voted for the renewal. At directors' meetings held in March, June, September, and December, 1922, and March, 1923, dividends were declared and accepted by plaintiff. At most, if not at all, of these meetings the plaintiff's representative was present participating in them, and making no objection to declarations of the dividends. At a meeting of the stockholders of the company in September, 1922, the plaintiff's stock was voted by proxy for all the present officers of the company. At that meeting a resolution was passed commending and ratifying the act of the corporation in procuring a second renewal of its charter, and plaintiff's stock was voted in favor of this resolution. All the stock of the company was so voted, and the action of the board approved. Since April 5, 1922, the directors met every two weeks. Plaintiff's representative on the board was present at nearly all of these meetings. Various corporate acts were done, including authorization of a new apartment house for operatives at a cost of $15,000, the purchase of a lot by the company for $1,800, extensions in the cloth-room at a cost of $6,000, extensive repairs on the cottages of the company, purchase of additional machinery at a cost of $32,000, purchase of new looms at a cost of $100,000, the making of a contract for wiring and equipping the mill village at a cost of $20,000, the purchasing of supplies by the factory at a cost of $3,359,146, and the borrowing of $1,000,000. All these corporate acts were done with the knowledge and without the objection of plaintiff. In April, 1922, after the company's charter had been renewed and after it went into effect, plaintiff purchased 367 additional shares of the stock of this company; and in April, 1923, it bought 308 additional shares, all of which were transferred to it on the company's books.

Persons who have dealt with a corporation as such are estopped

from denying its corporate existence. Civil Code (1910), § 2226. One who deals with a corporation as a legal entity, capable of transacting business, and in consequence receives from it money or other thing of value, is estopped from denying the legality of its existence. *Petty* v. *Brunswick &c. R. Co.,* 109 *Ga.* 666 (3) (35 S. E. 82). The plaintiff stockholder was aware of the intention of the company to apply for a renewal of its charter, and made no objection to this proceeding. He afterwards voted his stock in ratification and approval of the renewal thereof. He voted for the election of directors after the charter was renewed. With knowledge of all the facts, plaintiff afterwards acquired stock in this company. This stock was transferred by the new company to it on the company's books. Plaintiff's representative aided in the conduct of the corporate business under the new charter. Plaintiff had a special representative on the board of directors. If plaintiff had made direct application to the court for leave to file an information, in the nature of a quo warranto, against the company to require it to show by what authority it exercised its corporate powers, such application should have been rejected by the court. *Cole* v. *Dyer,* 29 *Ga.* 434. Clearly the plaintiff is estopped by its conduct in this matter, and has no standing in a court of equity when it seeks to have the affairs of this company wound up and its assets distributed among its stockholders.

*Judgment affirmed. All the Justices concur.*

RUSSELL, C. J., dissents from the second division of the opinion.