JOSEPH W. REID AND ALICE B. REID, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reid v. Commissioner
Docket No. 316-78.
United States Tax Court
T.C. Memo 1981-677; 1981 Tax Ct. Memo LEXIS 68; 42 T.C.M. (CCH) 1741; T.C.M. (RIA) 81677; November 24, 1981. *68 (1) Petitioner-husband and C incorporated two businesses (X and Y) in 1974. Petitioner-husband and C personally guaranteed X's debts under a factoring agreement with H. In 1976, H sued petitioner-husband, C, and X; later in 1976, H entered bankruptcy proceedings; in 1978, H's claim was released in exchange for release of a claim that X had filed against H. Held: Petitioners are not entitled to a deduction in 1975 on account of the foregoing. (2) In 1976, money judgments were rendered against petitioner-husband and others. Petitioners have not paid anything toward the judgments. Held: Petitioners are not entitled to a deduction in 1976 on account of the judgments. (3) In 1976, a penalty was assessed against petitioner-husband under sec. 6672, I.R.C. 1954. Held: Deduction of the penalty is disallowed. Sec. 162(f), I.R.C. 1954. (4) Petitioner-wife signed, but failed to read, petitioners' joint Federal income tax returns. Held: Since the asserted deficiencies are attributable to deductions and not omissions from income, petitioner-wife does not qualify for relief under the innocent spouse provisions. Sec. 6013(e), I.R.C. 1954. Joseph W. Reid, pro se. Eric S. Chofnas, for *69 the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners, and petitioners claimed overpayments, [1] as follows: Deficiency
Overpayment
Year
Determined
Claimed
1972
$ 5,667.77
$ 5,668
1973
4,460.00
4,460
1974
6,745.00
6,745
1976
3,598.00
1,390
The parties have reached agreement on several issues; the issues for decision are as follows: (1) Whether petitioners are entitled to deduct $ 252,951 for 1975 on account of petitioner-husband's guaranty of payment of debts under a factoring agreement; (2) Whether petitioners are entitled to deduct a total of $ 17,700 for 1976 on account of three State *70 court judgments rendered in 1976 against petitioner-husband; (3) Whether petitioners are entitled to deduct $ 1,876 for 1976 on account of a 100-percent penalty assessment (pursuant to sec. 6672[2]) against petitioner-husband; and (4) Whether petitioner-wife is not liable for any deficiencies because of the "innocent spouse" provisions of section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Joseph W. Reid (hereinafter sometimes referred to as "Joseph") and Alice B. Reid (hereinafter sometimes referred to as "Alice"), husband and wife, resided in Dalton, Georgia. A petition was filed with the Superior Court for Whitfield County, Georgia, on behalf of Robert Chambers (hereinafter sometimes referred to as "Chambers") and Joseph to incorporate Huntington Carpet Mills, Inc. (hereinafter sometimes referred to as "Huntington, Inc."). Attached to that petition *71 were Articles of Incorporation executed by Joseph as one of the two incorporators. [3] On February 1, 1974, the Superior Court entered an order incorporating Huntington, Inc., under the laws of Georgia. Huntington, Inc., was organized to "manufacture, buy, sell, distribute and generally deal in carpets and other textile products * * *"; Chambers and Joseph were its sole shareholders. Also on February 1, 1974, Chambers signed an agreement as Huntington, Inc.'s president, assigning all of its customer sales receivables to Hamilton Factors, Inc. (hereinafter sometimes referred to as "Hamilton Factors"). Chambers and Joseph signed a related agreement on that date as Huntington, Inc.'s shareholders guaranteeing Huntington, Inc.'s obligations to Hamilton Factors. Huntington, Inc., filed Federal corporate income tax returns for 1974 and 1975. A petition was filed with the Superior Court for Whitfield County, Georgia, on behalf of Chambers and Joseph to incorporate Chalet Carpets, Inc. (hereinafter sometimes referred to as "Chalet, Inc."). *72 Attached to that petition were Articles of Incorporation executed by Joseph as one of the two incorporators. [4] On September 24, 1974, the Superior Court entered an order incorporating Chalet, Inc., under the laws of Georgia. [5]Chalet, Inc., was organized to "manufacture, buy, sell, retail, wholesale, distribute and generally deal in carpets and other textile products * * *." To their 1974 Federal income tax return, petitioners attached a Form W-2 from "Huntington Carpet Mills, Inc.", to Joseph showing $ 3,158.60 Federal income tax withheld, $ 19,200 FICA wages, and $ 859.95 FICA employee tax withheld. Although the Form W-2 did not show an amount in the "Wages, tips, and other compensation" block, the $ 19,200 FICA wages was consistent with the total "Wages, salaries, tips, and other employee compensation" reported on line 9 of their Form 1040. On Part III "Income or Losses from Partnerships, Estates or Trusts, Small Business *73 Corporations" of Schedule E, petitioners claimed a deduction for a $ 563 partnership loss from "Chalet Carpets". To their 1975 Federal income tax return, petitioners attached a Form W-2 from "Huntington Carpet Mills, Inc.", to Joseph showing $ 2,403 Federal income tax withheld, $ 15,000 FICA wages, and $ 789.75 FICA employee tax withheld. Although the Form W-2 showed "0" in the "Wages, tips, and other compensation" block, the $ 15,000 FICA wages was consistent with the total "Wages, salaries, tips, and other employee compensation" reported on Line 9 of their Form 1040. On Part III of Schedule E, petitioners claimed a deduction for a loss of $ 252,951 attributable to Joseph's personal guaranty of Huntington, Inc.'s debts to Hamilton Factors. Operating costs of Huntington and Chalet equalled $ 233,602.25. [6]
On January 12, 1976, Hamilton Factors filed suit in the Whitfield County Superior Court against Joseph, Chambers, and Huntington, Inc., for debts incurred under *74 the factoring agreement. In 1976, after filing its suit against Joseph, Chambers, and Huntington, Inc., Hamilton Factors entered chapter XI bankruptcy proceedings in the United States District Court for the Eastern District of Tennessee. By order dated August 31, 1978, that court authorized the trustee in bankruptcy to release all claims of the bankruptcy estate against Joseph, Chambers, and Huntington, Inc., in exchange for an agreed order dismissing with prejudice a claim for $ 500,000 filed by Huntington, Inc., against the bankrupt estate. On their 1976 Federal income tax return (Part III of Schedule E), petitioners claimed deductions for losses relating to judgments rendered during 1976 by the Whitfield County Superior Court. The designations of the cases and the amounts of the claimed deductions are set forth in table 1. Claimed
Designation of Case
Deduction
Harold Albright, St. and
C.A. No. 13,739
$ 9,500
Ethel Albright v. J. W. Reid,
d/b/a Chalet Carpets of
Charlotte
Coronet Industries, Inc. v.
C.A. No. 13,613
4,700
J. W. Reid, Sr., Jack W. Hix,
and Robert Chambers
Northwestern Factors, Inc. v.
C.A. No. 13,738
3,500
Chalet Carpets, Inc., a Georgia
Corporation, J. W. Reid and
Robert Chambers
$ 17,700
In *75 the Albright case (C.A. No. 13,739), a jury verdict for the plaintiffs was filed on December 6, 1976, for $ 8,533.34, plus interest and costs. The judgment of the Whitfdield County Superior Court was affirmed by the Court of Appeals of Georgia in an opinion dated July 13, 1977. [7] In the Coronet case (C.A. No. 13,613), a jury verdict for the plaintiff against Joseph was filed on September 24, 1976, for $ 4,351.78, plus interest and costs. Judgment was entered against Joseph, Chambers, and Jack W. Hix, predicated on findings that the defendants failed to give adequate notice of the dissolution of their partnership to partnership creditors, failed to give adequate notice of the continuation of the partnership's previous business in corporate form, and intermingled individual and partnership assets with those of Chalet, Inc., and Huntington, Inc. *76 In the Northwestern case (C.A. No. 13,738), a Superior Court judgment was filed on March 26, 1976, against Joseph, Chambers, and Chalet, Inc., for $ 3,397.89, plus interest and costs; the same decree also included a judgment against Joseph and Chambers for $ 369.86 attorneys' fees. Petitioners have not paid anything toward the liabilities represented by these judgments. On their 1976 Federal income tax return (Part III of Schedule E) petitioners claimed a deduction of $ 1,876 designated "INTER REV.", which represents a 100-percent penalty assessment made by respondent against Joseph on September 27, 1976, as a responsible officer of one or more of his companies. [8] *77 A claimed overpayment on petitioners' 1976 Federal income tax return in the amount of $ 990.40 was applied by respondent on February 11, 1977, to this assessment; application of this overpayment plus an additional credit in 1978 satisfied the assessment, along with interest. Both petitioners signed their joint Federal income tax returns for each of the years 1972 through 1976. [9] However, Alice signed these returns without reading or reviewing them or in any way joining in their preparation. OPINION I. 1975 Loss
Petitioners contend that their 1975 claimed Huntington, Inc. loss was from a partnership, asserting that Huntington, Inc. "never qualified to do business or attained corporate status." Thus, they argue, they are entitled to deduct Joseph's allocable share of losses for that year. They also argue that the agreed dismissal of Joseph's claim against Hamilton Factors in the bankruptcy proceeding in 1978 constitutes "consideration" for the dismissal of Hamilton *78 Factors' claim against Joseph and Huntington, Inc. Petitioners assert that allowance of this deduction would entitle them to net operating loss carryover deductions for each of the years before the Court. Respondent contends that Huntington, Inc., is a corporation, the amount claimed relating to Joseph's guaranty agreement was not established as his liability because it was never reduced to judgment, and that amount was never paid by petitioners, who used the cash method of reporting income. [10] We agree with respondent. Petitioners bear the burden of proving that their claimed 1975 loss resulted from one or more businesses operated in partnership form. Rule 142(a), Tax Court Rules of Practice and Procedure; Blue Flame Gas Co. v. Commissioner, 54 T.C. 584, 598 (1970). Generally, the corporate entity will not be disregarded for purposes of Federal income taxation where it is created for business purposes or it actually conducts business following incorporation. *79 Moline Properties v. Commissioner, 319 U.S. 436, 438-439 (1943); Stoody v. Commissioner, 66 T.C. 710, 717 (1976), supplemental opinion 67 T.C. 643 (1977); Strong v. Commissioner, 66 T.C. 12, 22-23 (1976), affd. without opinion 553 F.2d 94 (CA2 1977). This is particularly the case where the demand that the corporate entity be ignored comes from the taxpayer-shareholder who chose to do business in this form. Sangers Home For Chronic Patients v. Commissioner, 72 T.C. 105, 115-116 (1979); Strong v. Commissioner, 66 T.C. at 22. In the instant case, the record persuades us that Huntington, Inc., was a corporation for such purposes. The documents necessary to incorporate Huntington, Inc., were executed and filed with the State court. Ga. Code Ann. sec. 22-803 (1970). [11] Furthermore, under Georgia law then applicable, Huntington, Inc.'s corporate existence began on the date of the State court order incorporating it. Ga. Code Ann. sec. 22-803(h) (1970). [12] A factoring agreement was signed on Huntington, Inc.'s behalf as a corporation by its president, Chambers and Joseph guaranteed debts under that agreement as its shareholders, and it filed Federal corporate income tax returns for 1974 *80 and 1975. The Forms W-2 attached to petitioners' Federal individual income tax returns show that Joseph was an employee of, and received compensation income from, Huntington, Inc., for 1974 and 1975. The foregoing facts outweigh Joseph's testimony that there were no meetings of Huntington, Inc.'s boards of directors or stockholders, assets were intermingled, and he never sent letters to the business' existing creditors about the incorporation or kept corporate minutes. This is so even though State law may, under certain circumstances, disregard the limited liability that would otherwise be an attribute of the corporation's existence. *81 Stoody v. Commissioner, supra; Perry v. Commissioner, 49 T.C. 508, 516-518 (1968); Skarda v. Commissioner, 27 T.C. 137, 144-145 (1956), affd. 250 F.2d 429, 433-434 (CA10 1957); cf. Blue Flame Gas Co. v. Commissioner, 54 T.C. at 599. We conclude that Huntington, Inc., was a corporation for Federal income tax purposes in 1975. Petitioners have failed to show that any part of their 1975 claimed loss deduction of $ 252,951 was a loss from a partnership, that any part of this amount was paid [13] by them in 1975, or that any part of this amount constituted a debt which became worthless in 1975 in the course of petitioners' business. We conclude that petitioners are not entitled to any part of their 1975 claimed loss deduction of $ 252,951. Petitioners claim that the Huntington, Inc., business was a partnership in 1975 on the basis that the business: (1) was operated as a partnership before the incorporation; (2) was never properly formed as a corporation; (3) was found to be a partnership under State law by the State courts; and (4) was not a corporation as a matter of law for Federal income tax purposes because corporate *82 characteristics were not established under sec. 301.7701, Proc. and Adm. Regs., and the noncorporate characteristics of lack of limited liability and lack of limited life were established by the holdings of the State courts. As to the first contention, the record contains little evidence. In any event, the question is whether the business was operated as a corporation in 1975. Petitioners have failed to show that what went on before the February 1, 1974, incorporation affected what went on after that event. Petitioners' second contention is not supported by the record or State law. We recognize that under Georgia law directors' or stockholders' failure to conduct their business as a corporate entity (for example, by commingling personal and corporate assets) can affect the extent of their liability to third parties. Brooke v. Day, 129 Ga. 694, 59 S.E. 769 (1907); Bone Constr. Co., Inc. v. Lewis, 148 Ga. App. 61, 250 S.E. 2d 851 (1978); Southern Cotton Oil Company v. Duskin, 92 Ga. App. 288, 88 S.E. 2d 421 (1955); Ga. Code Ann. sections 22-805 and 22-715(a)(4) (1970). However, we have not found any Georgia law suggesting that failure to hold board of directors' or stockholders' *83 meetings, failure to notify existing creditors about incorporation, failure to keep corporate minutes, or commingling of assets negates a corporation's existence for all purposes. Indeed, Ga. Code Ann. section 22-5103 (1970) provides that: "[t]he existence of a corporation, claiming a charter under color of law, cannot be collaterally attacked by persons who have dealt with it as a corporation. Such persons are estopped from denying its corporate existence." The State courts have applied the doctrine of "corporation by estoppel" against stockholders. Consolidated Textile Corp. v. Exposition Cotton Mills, 158 Ga. 747, 124 S.E. 707 (1924); Torras v. Raeburn, 108 Ga. 345, 33 S.E. 989 (1899). The only evidence in the record that arguably supports petitioners' third contention is the findings of the Whitfield County Superior Court in the Coronet case (see table 1, and the second paragraph after this table, supra). Joseph and Chambers were held liable by the Superior Court in part because they failed to observe the lines of the artificial entities they created. As a result, apparently, they were not permitted to avail themselves of the defense of limited liability against the plaintiff *84 in that suit. This is not enough to establish that the Superior Court found that Huntington, Inc., was a partnership. Petitioners' fourth contention is based on the so-called "Kintner regulations". Under sec. 301.7701-2(a)(3), Proc. and Adm. Regs., an unincorporated organization is not to be classified as a corporation unless it has more corporate characteristics than noncorporate characteristics. Under sec. 301.7701-2(a)(2), Proc. and Adm. Regs., the relevant characteristics are "centralization of management, continuity of life, free transferability of interests, and limited liability." At most, the Coronet case suggests that Huntington, Inc., lacked limited liability in the circumstances presented in that case. Petitioners have failed to show that Huntington, Inc., lacked any of the other above-mentioned corporate characteristics. In particular, petitioners have failed to substantiate their assertion that Huntington, Inc., lacked continuity of life. Petitioners assert that Joseph was a personal guarantor of Huntington, Inc.'s liabilities to Hamilton Factors. The record amply supports this assertion. Petitioners assert that the 1978 dismissal of Hamilton Factors' claim against *85 Joseph, Chambers, and Huntington, Inc., was in exchange for a dismissal of Huntington, Inc.'s claim against Hamilton Factors. The record amply supports this assertion. However, petitioners have not shown that this 1978 exchange of dismissals affects petitioners' entitlement to the claimed 1975 deduction. There is no evidence in the record that Joseph's guaranty of Huntington, Inc.'s liability to Hamilton Factors resulted in a payment by Joseph in 1975. Indeed, the fact that Hamilton Factors sued Joseph, Chambers, and Huntington, Inc., in 1976, suggests that no payment was made in 1975. Petitioners do not contend that they were accrual basis taxpayers in 1975 (see n. 13, supra). But, even if they were, the 1976 Hamilton Factors suit and its compromise in 1978 would lead us to conclude that petitioners have failed to show that they met the "all events" test, and so we would conclude that they were not entitled to accrue any liability on account of Joseph's guaranty in 1975. Security Mills Co. v. Commissioner, 321 U.S. 281 (1944); Dixie Pine Co. v. Commissioner, 320 U.S. 516 (1944); LX Cattle Co. v. United States, 629 F.2d 1096 (CA5 1980); Goebel Brewing Co. v. Commissioner, 43 T.C. 8 (1964); *86 General Communication Co. v. Commissioner, 33 T.C. 640 (1960). On this issue we hold for respondent. II. 1976 Judgments
Petitioners claim deductions on account of three judgments rendered during 1976 (see table 1, supra). On brief, they appear to argue that the deductions should be allowed because Huntington, Inc., and Chalet, Inc., operated as partnerships. Respondent arguers that no deductions should be allowed, because petitioners did not pay the judgments. We agree with respondent. The record in the instant case does not disclose the nature of the suits that resulted in these judgments. Except for the Coronet case, it does not suggest the basis for Joseph's liability. Petitioners do not suggest that they are accrual basis taxpayers, nor do they assert that they paid any of the judgments. For a cash basis taxpayer, a deduction relating to a judgment is allowed in the year it is paid. Magnon v. Commissioner, 73 T.C. 980, 1001-1002 (1980); Insurance Finance Corp. v. Commissioner, 84 F.2d 382 (CA3 1936), affg. a Memorandum Opinion of this Court. On this issue we hold for respondent. III. Section 6672 Penalty
Petitioners contend that, for 1976, they are entitled to deduct *87 $ 1,876 (see n. 8, supra) representing a 100-percent penalty assessment made against Joseph in that year as a "loss" and that section 162(f) does not preclude this deduction. Respondent asserts that section 162(f) and section 1.162-21(b)(1)(ii), Income Tax Regs., preclude the deduction of this penalty, imposed under section 6672. We agree with respondent. Section 162(a) allows deductions for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 162(f), however, provides: (f) Fines and Penalties.--No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law. Subsection (f) was added to section 162 by section 902 of the Tax Reform Act of 1969, which also revised section 162(c), relating to illegal bribes and kickbacks. In the Revenue Act of 1971 (Pub. L. 92-178, 85 Stat. 497), the Congress amended section 162(c). In connection with that amendment, the Congress commented as follows with respect to section 162(f): In connection with the proposed regulations relating to the disallowance of deductions for fines and similar penalties (sec. 162(f)), *88 questions have been raised as to whether the provision applies only to criminal "penalties" or to civil penalties as well. In approving the provisions dealing with fines and similar penalties in 1969, it was the intention of the Finance Committee to disallow deductions for payments of sanctions which are imposed under civil statutes but which in general terms serve the same purpose as a fine exacted under a criminal statute. The provision was intended to apply, for example, to penalties provided for under the Internal Revenue Code in the form of assessable penalties (subchapter B of chapter 68), as well as to additions to tax under the internal revenue laws (subchapter A of chapter 68) in those cases where the government has the fraud burden of proof (i.e., proof by clear and convincing evidence). It was also intended that this rule should apply to similar type payments under the laws of a State or other jurisdiction. General Explanation of the Revenue Act of 1971, Staff of the Joint Committee on Internal Revenue Taxation, p. 71; S. Rept. 92-437 (to accompany H.R. 10947), pp. 73-74, 1972-1 C.B. 559, 600. Thus,it is clear that the Congress intended section 162(f) to prevent the *89 deduction of assessable penalties under subchapter B of chapter 68. Section 1.162-21(b)(1)(ii), consistent with the legislative history in this regard, also provides that no deduction is to be allowed for an amount "[p]aid as a civil penalty imposed by Federal * * * law, including * * * assessable penalties imposed by chapter 68 of the Internal Revenue Code of 1954". Section 6672[14] *90 is part of "Subchapter B--Assessable Penalties" of chapter 68. (Cf. Helvering v. Mitchell, 303 U.S. 391, 404-405 (1938).) It follows that, under section 162(f), petitioners are not permitted to deduct any part of the section 6672 penalty imposed on Joseph. Patton v. Commissioner, 71 T.C. 389 (1978). In light of the Congress' clear directive, it is not necessary to analyze the effect of the cases and rulings cited by petitioners, since all of these cases and rulings preceded the enactment of section 162(f). In any event, these cases and rulings would not lead us to a different conclusion. Smith v. Commissioner, 34 T.C. 1100 (1960), affd. 294 F.2d 957 (ca/5 1961). IV. Innocent Spouse
Petitioners contend that Alice should not be liable for the deficiencies determined by respondent because she is an "innocent spouse" entitled to relief from liability under section 6013(e). Respondent contends that Alice is not entitled to relief under section 6013(e) because the deficiencies for the years in issue result from erroneous deductions claimed, not from omissions from gross income. We agree with respondent. Section 6013(e)[15] *92 expressly provides relief from liability for tax (including *91 interest, penalties and other amounts) attributable to omissions from gross income. Inasmuch as the deficiencies in issue are totally attributable to deductions, and not omissions, we conclude that Alice is not entitled to relief under section 6013(e). Estate of Klein v. Commissioner, 63 T.C. 585, 595 (1975), affd. 537 F.2d 701 (CA2 1976); Resnick v. Commissioner, 63 T.C. 524, 527 (1975). See Allen v. Commissioner, 514 F.2d 908, 915 (CA5 1975), affg. in part and revg. in part on another issue 61 T.C. 125, 132 (1973). Petitioners ask us to provide relief to Alice under section 6013(e) by analogizing liability attributable to omissions of gross income, to that attributable to erroneous deductions. *93 We cannot do so where the statute expressly limits relief to liability from the former. Petitioners also direct our attention to the innocent spouse rule of section 6653(b). Firstly, no fraud additions to tax have been determined or asserted in the instant case. Secondly, both the language of the statute, [16] *94 and its legislative history serve only to highlight the statutory restriction on application of section 6013(e). These two innocent spouse provisions were both enacted by Pub. L. 91-679, 84 Stat. 2063-2064, January 12, 1971. Both the House Ways and Means Committee Report (H. Rept. 1734, p. 4) and the Senate Finance Committee Report (S. Rept. 91-1537, p. 4, 1971-1 C.B. 606, 608) state as follows: This potential relief from the fraud penalty [sic] applies even though the spouse in question may be jointly liable for the underpayment in tax due. This relief would apply, for example, where the underpayment resulted from fraudulent deductions (rather than on omission from gross income)--an example of a situation in which no relief is provided the spouse for the tax liability as such. See Allen v. Commissioner, 514 F.2d at 915. On this issue we hold for respondent. In accordance with the foregoing and because of concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Petitioners also asserted that they disputed a deficiency of $ 880, and claimed an overpayment of $ 8,743, for 1975. We granted respondent's motion to dismiss for lack of jurisdiction as to 1975 on the basis that no notice of deficiency for this year was sent to petitioners. However, much of the dispute as to the years before the Court relatres to deductions for 1975 which, if allowable, may be carried over to the years over which we do have jurisdiction. See section 6214(b), Internal Revenue Code of 1954↩.
2. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
3. Joseph and Chambers were Huntington, Inc.'s only incorporators and only Board of Directors members. Joseph was Huntington, Inc.'s registered agent.↩
4. Joseph and Chambers were Chalet, Inc.'s only incorporators and only Board of Directors members. Joseph was Chalet, Inc.'s registered agent. ↩
5. A certificate of the Secretary of State of Georgia indicates Chalet, Inc., was incorporated as of September 25, 1974.↩
6. The record is not clear (1) when these costs were paid or accrued, and (2) whether they were costs of Huntington, Inc., and Chalet, Inc., or of one or more partnerships which Joseph asserts carried on the businesses.↩
7. It is not clear from the record herein whether the opinion referred to is Reid v. Albright, 142 Ga. App. 826, 237 S.E. 2d 229↩ (1977). The cited opinion merely holds that there was venue jurisdiction and that a North Carolina judgment was entitled to full faith and credit. The cited opinion does not indicate the basis or nature of the suit.
8. Although the parties stipulated that the assessment relates to Joseph's position as to Huntington, Inc., the Certificate of Assessments and Payents, Form 4340, stipulated into evidence, indicates that the assessment may also relate in part to his position as to Chalet, Inc., and another company, Sincerity Carpet. This certificate states that the amount of the assessment was $ 1,838.69, rather than the stipulated $ 1,876. The parties have not explained these discrepancies.
9. Peitioners claimed net operating loss carrybacks to 1972, 1973, and 1974 on account of their claimed 1975 net operating loss. Both petitioners signed the application for tentative refunds on account of this claimed loss. This application was filed January 19, 1976.↩
10. Respondent concedes that, if petitioners are entitled to dfeduct in 1975 any bad debts resulting from Joseph's guaranties of Huntington, Inc.'s obligations, then petitioners are entitled to deduct them as business bad debts.↩
11. The amendment of this provision in 1976, which became effective January 1, 1977, does not affect the validity of Huntington, Inc.'s 1974 incorporation. ↩
12. Pursuant to the amendment referred to in note 11, supra, Ga. Code Ann. section 22-803(i)↩ provides that if the Secretary of State issues a certificate of incorporation, then corporate existence begins as of the time of delivery of the certified articles of incorporation to the Secretary of State. This amendment does not affect the time of the commencement of Huntington, Inc's corporate existence.
13. See Rubnitz v. Commissioner, 67 T.C. 621, 627↩, n. 7 (1977).
14. SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. [The subsequent amendment of this provision by section 9(a) of Pub. L. 95-628, 92 Stat. 3633, designating the foregoing as subsection (a), does not affect the instant case.]
15. SEC 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special rules.--For purposes of paragraph (1)-- (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A). [The subsequent amendment of this provision by section 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1834, does not affect the instant case.]↩
16. Section 6653(b) states in relevant part: "[i]n the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse." In a case such as this, section 6653(c) provides that the underpayment means a deficiency as defined in section 6211. Thus, for purposes of the innocent spouse exemption from the fraud addition to tax, there is no restriction that the underpayment or deficiency result from an omission of gross income.