## APPEAL OF HAMLER COAL COMPANY.

Docket No. 6337.     Decided September 22, 1926.

A liability to respond in damages for breach of contract oc-
curring in 1920, which liability taxpayer does not admit to the
injured party and does not accrue on its books, is not a proper
deduction for the taxable year in which the breach occurred.

*W. W. Spalding, Esq.*, for the petitioner.
*Arthur J. Seaton, Esq.*, for the Commissioner.

This is an appeal from the Commissioner's determination of a
deficiency in income and profits tax for the calendar year 1920 in the
amount of $4,904.18, of which approximately $3,000 is in controversy.
The Commissioner in his amended answer admitted that the deter-
mination of deficiency was in error, as alleged by the taxpayer, in
regard to all items except a deduction of $6,896.94, which the tax-
payer claimed as a proper deduction from gross income on account
of an alleged bad debt.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation with its principal
office at Clarion.

On July 22, 1919, the taxpayer entered into the following agree-
ment with Currie & Campbell, a partnership:

For and in consideration of the sum of One Dollar, and other valuable
considerations, the Party of the first part, hereby agrees to furnish One Hun-
dred Fifty Tons, net, F O B their mine at Huey, Pa., Bituminous Coal of the
Lower Kittaning Grade, daily, commencing shipment on or about August 4,
1919 to party of the Second part, for and during the period of one year from
August 4, 1919, for which the said Second Party agrees to pay the sum of Two
and 50/100 ($2.50) Dollars per net ton, said payments to be made on the 20th
of the month following shipment by check mailable and payable to the Hamler
Coal Co., Clarion, Pa., actual railroad weights to govern all settlements.

The price or prices named in this contract are based upon the present rate
for mining. It is understood and agreed that any increase or decrease in the
cost of mining will be added to or deducted from the price herein named.

In case of strikes, accidents, deficient transportation, Federal Demands, or
other cause beyond the control of the party of the first part, unavoidably caus-
ing stoppage or partial stoppage of the mining and shipping of this coal, deliv-
eries herein contracted for may be suspended or partially suspended as the case
may be, and shall not require party of the first part to ship, or second party to
receive in subsequent months amount not shipped or received during the period
of such contingency.

Both parties to this agreement performed their respective parts
thereunder until some time in April, 1920.

Beginning in April, 1920, the taxpayer failed to deliver to Currie
& Campbell the full amount of tonnage provided for in the con-

tract. The shortages from April, 1920, to the expiration date of the contract were as follows:

|  | Tons |
|---|---|
| April, 1920 | 1, 092. 55 |
| May, 1920 | 2, 006. 40 |
| June, 1920 | 2, 684. 05 |
| July, 1920 | 3, 318. 10 |
| August, 1920 | 450. 00 |

The average market price of the coal mined by the taxpayer rose rapidly from April, 1920, to August, 1920, and the taxpayer did not ship the full amount of coal to Currie & Campbell, as required under his contract, but instead sold coal during this time on the open market at the higher prices.

From July 14, 1920, until July 29, 1920, the taxpayer and Currie & Campbell carried on a correspondence in which each blamed the other for breach of the contract. Currie & Campbell in this correspondence claimed that the taxpayer was not shipping the required amount of coal but instead was selling coal on the open market when it had plenty of cars to comply with the contract. The taxpayer on the other hand claimed that Currie & Campbell were not paying for the coal shipped in accordance with the terms of the contract and that it was shipping a proportionate amount of coal and excused itself for not shipping the full amount because the Pennsylvania Railroad was not furnishing it with its allotment of cars. In the latter part of July, 1920, each of the parties notified the other that it would no longer perform the contract but instead would institute suit for the other's breach of contract.

In September, 1920, the taxpayer consulted its attorney in regard to the Currie & Campbell contract. After being informed of all the facts relating thereto this attorney advised the taxpayer that it had breached its contract and that Currie & Campbell could retain the amount due for coal already shipped and could recover additional damages against the taxpayer.

The account with Currie & Campbell as it stood on the books of the taxpayer on July 31 showed an unpaid balance due the taxpayer of $6,896.94. This was for coal delivered during June and July, 1920. The items making up this total remained on the books of the taxpayer as an account receivable, due from Currie & Campbell, until May 31, 1922, when they were charged off to deficit account.

On August 22, 1921, Currie & Campbell filed a statement of claim against the taxpayer in the Court of Common Pleas of Clarion County, Pa., claiming damages in the amount of $50,872.78, with interest, against which they allowed the taxpayer a credit of $5,573.34, representing the amount which they admitted was due the taxpayer for coal shipped during June and July.

On September 26, 1921, the taxpayer filed an affidavit of defense with counter-claim to the above suit, in which it denied all liability under the contract and set up a counter-claim to the amount of the said account receivable, to wit, $6,896.94.

The parties settled this suit out of court in the early part of 1922 and on May 31, 1922, the taxpayer paid Currie & Campbell $5,255.80, paid their own attorney $953.96, and in addition relinquished any right to collect for the coal which they had shipped to Currie & Campbell and for which they had charged Currie & Campbell the above sum of $6,896.94.

Currie & Campbell were solvent during all of this time.

The taxpayer never attempted to ascertain what its liability would be on account of its breach of contract, nor did it set up on its books any accrued liability to cover the same.

In its income-tax return for the calendar year 1920 the taxpayer claimed a $6,896.94 deduction from gross income as a " bad debt," the amount being the account against Currie & Campbell for the coal shipped during June and July, 1920.

OPINION.

ARUNDELL: Under the circumstances set forth in the findings of fact, the petitioner contends that the amount of $6,896.94 due it by Currie & Campbell should be allowed as a deduction from income for the year 1920, either as a bad debt or as a loss arising out of a transaction entered into for profit.

It seems clear that the amount is not deductible as a bad debt, as Currie & Campbell were, at all times here material, entirely solvent, and, moreover, the amount sought to be deducted was not charged off the books during the year 1920.

We believe that the deductibility of the item in question as a loss is ruled by the *Appeals of New Process Cork Co.*, 3 B. T. A. 1339, and the *Bump Confectionery Co.*, 4 B. T. A. 50. In those cases as here there was a breach of contract within the taxable year and realization by the taxpayer that it had made itself liable for damages. In those cases as in the instant one no recognition of the liability was communicated by the petitioner to the party damaged, nor did it enter on its books an estimate of the damages due. Such facts we have held are not sufficient to give rise to an accrual, and what the taxpayer is in fact seeking to deduct is a reserve to cover in part the damages for which it may be required to respond. As we pointed out in the *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79, the Revenue Acts do not permit of the setting-up of a contingent reserve.

At the time the case was heard the taxpayer sought to bring itself within the rule laid down in the *Appeal of Producers Fuel Co.*, 1 B. T. A. 202, but in that case we had an admission of liability and an accrual on the books, all within the taxable year. This distinction we regard as vital.

The Commissioner by his amended answer has admitted that the first two assignments of error in the petition are well taken. We have therefore considered only the third assignment of error.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*