GENERAL COMMUNICATION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67528. Filed January 8, 1960.

*Bertram H. Loewenberg, Esq.,* and *Robert S. Jones, Esq.,* for the petitioner.

*Chester M. Howe, Esq.,* for the respondent.

648

**OPINION.**

Raum, *Judge:* We have carefully considered the testimony and documentary evidence of record and have come to the conclusion that the accrued royalty liability in question was not sufficiently fixed or definite as of September 30, 1954, to warrant deduction at that time. The requirements for the deductibility of accrued liabilities have been variously stated. In *Dixie Pine Products Co.* v. *Commissioner*, 320 U.S. 516, 519, it was regarded as settled law "that in order to truly reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer." And in *Lucas* v. *American Code Co.*, 280 U.S. 445, 450, it was stated that an accrued liability is not to be regarded as fixed unless there is "a definite admission of liability, negotiations for

settlement are begun, and a reasonable estimate of the amount of the loss is accrued on the books." Without deciding whether the estimate accrued on petitioner's books was reasonable, we are satisfied from the record that petitioner had not admitted its liability as of the close of the taxable year, nor had it entered into negotiations for settlement.

Petitioner argues that in the absence of a previous denial of liability, such as by judicial contest or express repudiation, the requirement of admission is superfluous and unrealistic. We cannot agree. The taxpayer has the burden of proving that the asserted liability was in fact uncontested. The presence of an admission, express or implied, serves as direct proof that the taxpayer was not contesting liability. But absence of an admission, while not conclusive proof of a contest, certainly leaves a gap in petitioner's proof in the circumstances of this case.[1] A taxpayer may resist payment of an asserted claim in more subtle ways than express denial of liability or adoption of a litigious attitude. The facts of the instant case are an excellent example of this, for without evidencing express denial, they strongly indicate that petitioner intended to resist payment, in an effort either to compromise its liability or, if necessary, defend against it. By letters dated October 7, 1952, and January 27, 1953, R.C.A. demanded that petitioner report the sales of the equipment in question for royalty. As of September 30, 1954, petitioner had not submitted even a tentative report or computation to R.C.A. To the contrary, on December 23, 1952, it notified R.C.A. of its prior assumption that products manufactured on governmental orders were not subject to patent applications, and that it might be necessary ultimately to employ patent counsel. At the conference of April 27, 1953, petitioner made no effort to open settlement negotiations, but merely listened to the presentation of R.C.A.'s position with regard to interpretation of a difficult and complex license agreement. Although petitioner may have conceded the limited use of a few R.C.A. patents, it denied or questioned the use of others and made no concessions with respect to the validity of the patents in question, including those it had used. Such concession of limited use would hardly constitute an admission of general liability for royalties; petitioner itself indicated as much when Jones, in his letter to counsel summarizing the conference, stated petitioner's serious doubts as to the correctness of R.C.A.'s position under the agreement, asked counsel to investigate an entire range of questions bearing on the

---

[1] *Producers Fuel Co.,* 1 B.T.A. 202, cited by petitioner, is not in point since in that case settlement negotiations began, and offers of settlement were made, during the taxable year. Cf. *Sunset Color Works,* 21 B.T.A. 304; *Hidalgo Steel Co., Inc.,* 8 B.T.A. 76; *Bump Confectionery Co.,* 4 B.T.A. 50; *New Process Cork Co,* 3 B.T.A. 1339; *Lucas* v. *American Code Co.,* 280 U.S. 445.

issue of liability, and adverted again to the possibility of having to employ patent specialists. As of December 1953, petitioner's general counsel thought it necessary to employ patent counsel, and the questions of liability and the extent thereof were accordingly submitted to Robert B. Russell. Russell's written opinion of July 16, 1954, indicated definite optimism with respect to the possibilities of compromising or, if necessary, defending against R.C.A.'s claim. In confident terms, he referred to "the weakness of RCA's patent position" and his expectation of developing "a strong argument to the effect that we are practicing the prior art rather than the RCA patents." He also suggested a public policy argument which, in his opinion, rendered the license agreement "quite vulnerable" when combined with his "expired patent theory." And, in discussing compromise, Russell advised an alternative method of computation which, he was "reasonably sure," would come to a substantially less figure than the method provided in the agreement. To develop these theories, Russell suggested he make a patent investigation in Washington, D.C., and petitioner authorized such an investigation. We cannot believe, as petitioner suggests, that it had ceased resisting payment as of September 30, 1954, which was prior to Russell's patent investigation. That view, expressed in Andres' testimony, is inconsistent with the optimism expressed in Russell's opinion. Russell himself admitted on cross-examination that one purpose of his Washington trip was to investigate a basis for compromising petitioner's liability and that "accordingly the company took no steps to make payment of the liability pending my further advice." Moreover, that view is not borne out by subsequent events. Russell's memorandum of his Washington trip indicates on its face that he had made considerable progress in developing the prior art, and renews the suggestion that a separate computation of royalty might be made with respect to those patents not anticipated by prior art.

At the conference of March 18, 1955, Russell was still concerned with a "possible avenue for settlement" in regard to "past operations" and with "new defenses." Petitioner suggests that these terms were used in regard to a possible R.C.A. suit for infringements occurring after December 31, 1954, when the license agreement expired; we do not agree. We have carefully studied the record and are fully satisfied that these terms were not used in any such attenuated sense but were intended to refer to the basic controversy between petitioner and R.C.A. relating to petitioner's liability under the license agreement.

We are of the opinion that the liability which petitioner attempted to accrue as of September 30, 1954, was neither fixed nor uncontested at that time; it was in the nature of a reserve for contingencies, justi-

fied perhaps for purposes of sound business accounting but too uncertain to permit of deductibility.

*Decision will be entered for the respondent.*