WEBB CONSTRUCTION COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Webb Constr. Co. v. Commissioner
Docket No. 12678-78.
United States Tax Court
T.C. Memo 1981-742; 1981 Tax Ct. Memo LEXIS 7; 43 T.C.M. (CCH) 241; T.C.M. (RIA) 81742; December 31, 1981. Eugene M. Short, Jr., for the petitioner. David M. Kirsch, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined deficiencies of *8 $ 125,689 and $ 18,611 in petitioner's income taxes for the taxable years ended April 30, 1973, and April 30, 1974, respectively. Petitioner is an accrual basis taxpayer. The only matter in issue is whether petitioner may deduct, as an accrued liability for its taxable year ended April 30, 1974, the cost of repairs to a building it had constructed, which was damaged in May of 1973. The answer depends upon whether all events fixing its liability occurred in the taxable year ended April 30, 1974. The 1973 deficiency results solely from the disallowance of net operating loss carrybacks from 1974. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioner is a Florida corporation with its principal office in Miami, Florida. It maintains its books and records on the accrual basis of accounting. By means of an oral contract, petitioner agreed to construct, and did construct, a combination showroom, warehouse, and office facility for Continental Equities, Inc. (Continental). Continental is "owned" 50 percent by Tom Maxey and 50 percent by William C. Webb, petitioner's sole shareholder. *9 The building was constructed explicitly for the use and occupancy of Levitz Furniture Co. of Florida (Levitz), which entered into a long-term written lease with Continental. Levitz provided the plans and specifications for construction of the building, as well as the construction financing, and cost overruns were to be borne by Levitz. The terms of the lease disclose that Levitz had significantly greater rights and obligations in respect of the property than those of an ordinary lessee. The initial term of the lease was 30 years, and Levitz was given renewal options by which it could extend its occupancy for an additional 20 years. Included in the lease was a clause for escalation of the rent at five-year intervals in accordance with a formula pegged to the Consumer Price Index. The lease was termed "absolutely net to [Continental]", which apparently meant that the yield to Continental was the stated rent free of any cost of repair, maintenance, or operation of the property. In this regard, Levitz promised to keep the property in good repair and return the property in like condition at the termination of the lease. Any expense incurred for major repairs was to be borne by *10 Levitz. Levitz was required to maintain insurance against damage from fire and other causes, and Continental agreed to pay for repair of any resulting damage only to the extent that it received the proceeds from such insurance. On May 9, 1973, a portion of the roof and supporting walls of the building collapsed, resulting in substantial damage to the building. The collapse was occasioned by an unusually heavy rainfall and windstorm. Petitioner determined that the collapse was due to latent defects in the welds of the roof joists which gave way under the highly abnormal weather conditions. Petitioner had purchased the roof joists from a jobber, Electric Steel Products, Inc., which in turn had obtained them from Congaree Iron and Steel Co. Petitioner commenced repairs at the request of Levitz, but ceased work when Levitz refused to pay petitioner's initial invoice for the work. The charges for that initial work were some $ 30,000, and are not involved in this case. Levitz then completed the repairs at a total cost to it of $ 563,522. Petitioner held a special meeting of its board of directors on April 19, 1974. Present at the meeting were Robert A. Shupack, counsel to petitioner; *11 Myles Klein, petitioner's C.P.A.; and the three directors of petitioner, William C. Webb, Tom Maxey, and H. Ted Webb. The minutes describe the proceedings as follows: The Chairman requested a financial report from Mr. Klein and his pencilled, informal and unaudited opinion as to the Corporation's profit and loss statement for the fiscal year ending April 30, 1974. Mr. Klein orally gave same and pointed out that the profit sharing contribution was due to be reflected on the books of the Corporation no later than the end of its said fiscal year. Mr. Klein further stated that because the Corporation anticipated a loss for said fiscal year it was questionable whether a profit sharing contribution could be made. The Chairman then requested a report relative to the collapse of the Levitz Warehouse roof which occurred on May 9, 1973. It was reported that M.R. Harrison had completed repairs to the Levitz building and that the cost thereof was $ 563,522. Since liability insurance is unavailable to cover the repairs to the Levitz building this obligation for payment will have to be undertaken by the Corporation. It was stated that such was the opinion of Reginald L. Williams, Esquire. *12 It was stated that the Corporation's insurance carriers were Maryland Casualty and American Home Insurance Company. Mr. Shupack then stated that because the aforesaid liability was ascertainable, all events fixing total liability had occurred and that liability was uncontested based upon the doctrine of vicarious liability that Section 461(a) of the Internal Revenue Code requires the loss be taken as a tax deduction in the fiscal year ending April 30, 1974. The Chairman then recommended that the Corporation accrue on its books and on its Tax Return the Levitz loss in the amount of $ 563,522. Thereupon, on a motion duly made, seconded and unanimously carried the following Resolution was adopted: RESOLVED, that the Corporation accrue on its books and Tax Return on or before the end of the fiscal year the loss emanating from the collapse of the Levitz Warehouse roof in the amount of $ 563,522. Petitioner accrued a cost of sales deduction in the amount of $ 563,522 on its tax return for the fiscal year ended April 30, 1974, claiming this amount represented petitioner's ascertainable liability for the cost of repairs to the building. This amount was *13 determined by reference to actual amounts expended by Levitz (primarily through M. R. Harrison), and the parties agree that, if otherwise deductible in fiscal 1974, the amount claimed ($ 563,522) is correct. Petitioner did not accrue this amount as a loss on its books at year end, because the decision was made not to reflect a loss from the collapse on petitioner's financial statements for this period. [1] At no time was an entry made on the books of Continental to reflect either a reduction in the value of the building or a receivable from petitioner with respect to the damage to the building. Continental was a cash basis taxpayer, but this fact was entirely irrelevant in respect of the propriety of including a debt owed to it as an asset on its balance sheet. On or about May 7, 1975, Levitz sued petitioner, William C. Webb, Continental, and other defendants in Dade County, Florida, Circuit Court.The complaint alleged that Webb Construction expressly *14 warranted to Continental that the work would be of good quality, that Webb breached this warranty, and that Levitz was a third party beneficiary of the warranty. The complaint also alleged that Webb Construction breached its implied warranties with respect to the building, and was negligent in the construction of the building. In its answer, petitioner denied these allegations [2] and stated several affirmative defenses, including the claim that the collapse occurred due to an "act of God". At the time of trial of this case, the Levitz litigation was on appeal from a summary judgment in favor of Continental on a counterclaim for rent withheld by Levitz.
*15 From the date of the collapse to the time of trial in this case, petitioner had not paid any amount to Continental, Levitz, or any other party in respect of the $ 563,522 expended by Levitz for repairs to the building. The examiner of petitioner's fiscal 1974 tax return apparently proposed an adjustment disallowing the deduction for the accrued liability on the ground that the liability was not fixed at the close of the year. Petitioner protested this adjustment, in a memorandum verified under penalty of perjury by its president, claiming that "the deduction represented an accrual of liability for reimbursement to Levitz Furniture Company of the actual amounts expended to effect the repairs". [Emphasis supplied.] As of the time its petition was filed in this case, petitioner continued to maintain that the deduction was a valid accrual of liability to Levitz for the expenses occured by Levitz to repair the building. Some 11 months after the Government filed its answer, petitioner filed a motion under Rule 41(a), Tax Court Rules of Practice and Procedure, for leave to amend its petition to state that the accrued liability was to Continental rather than to Levitz *16 . The motion was granted. In its subsequent communications with the Government and on brief, petitioner has alleged liability to Continental alone as the basis for the claimed deduction. OPINION The issue for decision is whether, under the petitioner's method of tax accounting, the liability for loss from the collapse is properly deductible in the taxable year ended April 30, 1974. Section 461(a), I.R.C. 1954, provides as a general rule that a deduction "shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income". In this case, the applicable accounting method is the accrual basis, because petitioner keeps its books in this manner and the accrual basis is permissible for tax purposes. See section 446(a) and (c). When this basis is used, the appropriate standard for determining the proper taxable year in which an item is deductible is as follows (section 1.461-1(a)(2), Income Tax Regs.): [A]n expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. This so-called *17 "all-events test" is actually two separate tests: the deduction is permitted only when the existence of the liability is definitely fixed and the amount thereof is reasonably determinable. No issue has been raised as to the latter requirement, for the parties have stipulated that, if properly deductible, the amount shown on the taxpayer's return is correct. Thus, it is only the "fact of the liability" which concerns us. Petitioner contends that occurrence of the collapse, Levitz's repair of the building, and alleged admission of its own liability to Continental in the amount paid by Levitz, all within the taxable year, should be sufficient to establish deductibility of the loss in the year ended April 30, 1974. The Government disputes petitioner's claim that petitioner's liability to Continental (which in fact has never been paid to Continental) was admitted during the taxable year, and contends that without such an admission the deduction is improper. According to petitioner, the basis of its liability to Continental was for breach of its contract for construction of the building. In a series of early cases, the Board of Tax Appeals wrestled with the issue of when a *18 liability for breach of contract is sufficiently established to justify a deduction. In general, the cases seemed to turn on whether the taxpayer had admitted the liability to the injured party and whether the liability was accrued on the taxpayer's books. Compare Fraser Brick Co. v. Commissioner, 10 B.T.A. 1252, 1258 (1928), and Producers Fuel Co. v. Commissioner, 1 B.T.A. 202, 207 (1924); with Hamler Coal Company v. Commissioner, 4 B.T.A. 947, 949-950 (1926), and Bump Confectionery Co. v. Commissioner, 4 B.T.A. 50, 52 (1926). This analysis was expressed as a tripartite test in Lucas v. American Code Co., 280 U.S. 445, 450 (1930), where the Supreme Court summarized the Board's holdings in this manner: [A] loss occasioned by the taxpayer's breach of contract is not deductible in the year of the breach, except under the special circumstances where, within the tax year, there is a definite admission of liability, negotiable estimate of the amount of the loss is accrued on the books. (Emphasis supplied.) (Footnote omitted.) The Court explained further the rationale for requiring the taxpayer *19 to meet this standard, distinguishing between the mere breach and actual realization of the loss: "For, even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim". Lucas v. American Code Co., supra, 280 U.S. at 450. The importance of the admission was recognized by this Court in General Communication Co. v. Commissioner, 33 T.C. 640, 654 (1960): Petitioner argues that in the absence of a previous denial of liability, such as by judicial contest or express repudiation, the requirement of admission i superfluous and unrealistic. We cannot agree. The taxpayer has the burden of proving that the asserted liability was in fact uncontested. The presence of an admission, express or implied, serves as direct proof that the taxpayer was not contesting liability. * * * A taxpayer may resist payment of an asserted claim in more subtle ways than express denial of liability or adoption of a litigious attitude. Thus, it is incumbent upon petitioner to show that liability to Continental was admitted within the taxable year. As to accrual of the loss on the books, we have found as a fact *20 that the accrual was made for tax purposes only and not for book purposes. We have no doubt that a conscious decision was made by the accountant responsible for compiling petitioner's financial statements to treat this item in a contradictory fashion, at once accruing the loss for the tax return and postponing recognition of it on the income statement and balance sheet. Whether this inconsistency alone [3] would be sufficient to preclude the deduction, even though liability were admitted, is a question we need not address, for we find that petitioner has failed to carry its burden of proof as to admission of the liability. Since petitioner has therefore failed to satisfy essential requirements for establishing the deduction, we hold for the Government. The resolution passed at the special *21 meeting of petitioner's board of directors cannot, standing alone, qualify as a "definite admission of liability" to Continental. There is no mention of Continental in either the resolution or the minutes. [4] In addition, the resolution is not couched in terms of an admission of liability to anyone; rather, it is simply a statement that a loss be accrued on the books and the tax return in the amount of the damage to the building. [5] It is important to note that Mr. Shupack, the attorney who drafted the minutes, testified that at the time of the meeting the contemplated liability of petitioner was of an unspecified nature and to an unspecified party; in his view, petitioner would ultimately be held liable to someone on some theory of liability and this, he thought, was sufficient to justify the deduction in fiscal 1974. This is contrary to the testimony of Mr. Webb and Mr. Maxey, discussed infra, to the effect that an oral admission of liability to Continental was made at the meeting. *22 Petitioner contends that, both before and at the special meeting, demand was made by Mr. Maxey (on behalf of Continental) that petitioner pay for the cost of repairs to the building, and that at the meeting Mr. Webb (on behalf of petitioner) did agree to pay. While the testimony of these two directors of petitioner supports such a contention, we do not find the statements of such obviously interested witnesses to be convincing in the context of this case, and they are insufficient to carry petitioner's burden of proof. We heard that testimony and did not find it credible. As noted above, Mr. Shupack, an independent witness, failed to corroborate this assertion of a clear admission of liability being made to continental (via Mr. Maxey, present as a director of petitioner) at the meeting. In addition, the other independent witness, Mr. Klein, indicated that the relevant discussion at the meeting was not in terms of liability solely to Continental, but that liability to Levitz and other parties was discussed as well. Indeed, it was Mr. Klein who prepared the protest letter which spoke, as late as 1977, of liability to Levitz without making mention of Continental as an existing *23 or even potential claimant. Moreover, Mr. Webb, who allegedly made the admission of liability at the meeting of the board of directors, stated at trial that he would contest (on behalf of petitioner) such liability if Continental were made whole by Levitz (as to restoration of the building and payment of withheld rent), provided that a reasonable argument could be made that recovery by Continental from Levitz would relieve petitioner of any obligation to pay for repairs. [6]
*24 A further consideration casting doubt upon the existence in fact of any explicit unconditional admission of liability to Continental is the history of petitioner's pleadings in this very case. In its original verified petition in this Court petitioner sought to accrue the liability in question as a debt owed to Levitz, without a word being said about a debt to Continental. It is plain to us that it was only at a later time that petitioner realized the futility of a claiming an accrual of a debt to Levitz when it was in fact contesting Levitz's claim. It then sought to amend its petition to contend instead that it was accruing a debt, not to Levitz, but to Continental. Although it had every right to seek to present such an amendment to its petition, the circumstances in question cast serious doubt as to the actual existence of any such prior unconditional admission of liability by it to Continental. Surely, if there had been any such clear admission, it would have been previously alleged. The "new look" in the amended petition cannot change the old result of no accruability that would have been compelled under the original petition. The new look is based upon a factual underpinning *25 that we find absent here, and the very history of the change of position in the context of this case supports that conclusion. What we said in a somewhat similar situation, but arising in a different factual context, is equally applicable here ( Miller v. Commissioner, 35 T.C. 631, 640-641 (1961), affd. 299 F. 2d 706 (2d Cir. 1962)): Petitioner's position * * * has undergone radical changes during this litigation. * * * Petitioner, of course, was entitled to revise her contentions in her amended petition, but to the extent that they represent a new and inconsistent presentation of basic facts, it is appropriate to examine her present allegations with particular caution. An appreciation of the unhappy consequences of petitioner's original position undoubtedly led to the filing of the amended petition in which an entirely different version of the transaction is set forth. * * * We do not agree that the new look can successfully change the old result. The purpose of requiring an admission of liability is to bridge the gap between an "unquestionable breach" and actual loss. [7] Here, despite petitioner's "proof", a chasm remains. If Mr. Webb did *26 express in absolute terms his intention (on behalf of petitioner) to pay Continental, he apparently did not do so in the presence of the other persons at the meeting. We are unconvinced by petitioner's evidence that any such admission was in fact made. It is clear that petitioner was not admitting unconditional liability to anyone in particular; instead, its attention was focused on contesting the Levitz claim [8] with the hope that it would escape the affair unscathed due to Levitz's obligation to repair the building under the terms of the Levitz-Continental lease. Petitioner was actively seeking to prevent its "mere liability to suit" from maturing into a "recognized obligation to pay", Bump Confectionery Co. v. Commissioner, 4 B.T.A. 50, 51 (1926), and such a posture is incompatible with deduction of the loss in fiscal 1974. We hold that all events fixing petitioner's liability for damage to the building did not occur within the taxable year ended April 30, 1974, and the Government must, therefore, prevail. *27 Decision will be entered for the respondent. Footnotes
1. We note that the amount was first entered on petitioner's books as a "contingent liability" and then the entry was immediately reversed, an apparent accounting technique used to take the deduction for tax purposes only.↩
2. It is true that the denial was to allegations in the conjunctive with respect to William C. Webb (also a defendant) and the petitioner, thus leaving it open to theoretical conjecture whether the denial was intended to mean only that the allegations were contested merely to the extent that they referred to both. However, we think that a fair interpretation of the pleading reflects a denial as it relates to each of those two defendants, and particularly as it relates to petitioner which filed its own denial to the allegations.↩
3. While there is no evidence that the third factor mentioned in Lucas v. American Code Co., 280 U.S. 445↩ (1930), the initiation of settlement negotiations, occurred during fiscal 1974, we place little emphasis on this aspect of the case since the amount of damage to the building was known to all concerned parties and negotiations on this issue were therefore unnecessary.
4. The resolution does speak of "the collapse of the Levitz Warehouse roof", and the matter is left in a fog as to who would be treated as the proper claimant against petitioner. It does appear that Levitz later sued petitioner and others, but petitioner vigorously contested Levitz's right to recover, and there is no credible evidence that Continental ever made a claim against petitioner. ↩
5. No explanation was offered as to why the loss was not accrued on the books for fiscal 1974 despite this resolution of the directors. For our purposes, the significant act is the accrual itself, and a mere resolution directing such accrual does not meet the requirement set out in Lucas v. American Code Co., supra↩.
6. Petitioner directs our attention to Florida's collateral source rule, see, e.g., Walker v. Hilliard, 329 So. 2d 44 (Fla. Dist. Ct. App. 1976), which states in general that recovery from one party in a contract action will not prevent duplicate recovery from a second party at fault. According to petitioner, this undercuts the theory that petitioner could avoid liability to Continental if Continental were made whole by Levitz. We are not persuaded, however, that the Florida courts would apply the collateral source rule in the unusual circumstances presented here, where it is plain that petitioner was inextricably involved in the first instance together with Levitz and Continental in the planning and construction of the building. Certainly, the Florida cases cited to us have not gone that far. In addition, the relevant point for our purposes is not whether petitioner could successfully contest liability, but only whether petitioner would contest liability at all, and whether it had unambiguously and unconditionally admitted such liability to Continental↩.
7. See Bump Confectionery Co. v. Commissioner, 4 B.T.A. 50, 51 (1926): With the breach there of course arises a cause of action by the injured party, which it may or may not see fit to pursue. Should it, for reasons of policy, or otherwise, not demand damages, the obligor may escape payment. Conceding that it may be proper to accrue any approximation, it is certainly essential that there be a recognized obligation to pay before one's right to accrue arises, and a mere liability to suit is not sufficient. ↩
8. Petitioner has made no claim that it is entitled to a deduction under sec. 461(f), I.R.C. 1954, for the asserted liability to Levitz which petitioner was contesting. We agree that the benefits of sec. 461(f) are unavailable to petitioner, because no transfer of funds to satisfy the asserted liability occurred within the taxable year. See sec. 1.461-2(a)(1)(ii), Income Tax Regs. In focusing on the absence of a transfer of funds, we do not mean to imply that the other conditions for deductibility under sec. 461(f)↩ were met by petitioner. We note only that this threshhold requirement of a transfer of funds was unfulfilled.